UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| AMERICA'S HOME PLACE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 1:21-CV-00224-DCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| NATHAN MYERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND
TEMPORARY RESTRAINING ORDER**

Plaintiff America's Home Place, Inc. ("AHP") filed a Verified Complaint [Doc. 1] against

Defendant Nathan Myers ("Myers") followed by a Motion for Preliminary Injunction/Temporary

Restraining Order [Docs. 2, 4], and a Motion for Expedited Hearing [Doc. 3].

**I.      BACKGROUND**

AHP is a Georgia based company that constructs "pre-sold, single-family, detached lot

homes…." [Doc. 1, ¶ 1]. Myers is a Tennessee resident who worked for AHP as a project manager

from November 12, 2018 until his resignation on July 12, 2021 [Doc. 4, pg. 1]. As a project

manager, Myers "had access to confidential sales accounts, account lists, client lists, prospective

client lists … agents and contractors." [Doc. 1, ¶ 6]. On February 15, 2021, Myers entered into

an Employment Agreement with AHP in which he agreed he would not "engage in any business

which directly or indirectly competes" with the business of AHP and agreed to avoid engaging in

any conflict of interest, which included "building speculative homes…." [Doc. 1-1, pg. 2]. He

agreed not to use AHP's "drawings" or other intellectual property of his employer and to refrain

from competing with AHP "within a sixty-mile radius of AHP's Chattanooga office for a period

of one year following the conclusion of his employment." [Doc. 1, ¶¶ 10, 12]. He also stipulated that competing with AHP in violation of the Agreement would cause irreparable damage to AHP and agreed that AHP would be entitled to a preliminary injunction "restraining [him] from breaching or continuing to breach" the Agreement. [Doc. 1, ¶ 13].

In July 2021, AHP learned that Myers was, in fact, building a spec house located at 1786 Welcome Valley Road in Benton, Tennessee (the "House") "outside of his employment with AHP." [Doc. 1, pg. 1]. When AHP confronted Myers, Myers resigned on July 12, 2021 [*Id*.]. AHP learned in August 2021 that Myers was using AHP's "Berglund 'L'" house plan to construct the House in violation of the Agreement, and that Myers was using one of AHP's trade accounts to purchase appliances for the House, and that he planned to sell the House, all without AHP's knowledge or consent and in violation of the Agreement [*Id*.].

AHP filed this lawsuit seeking a temporary restraining order, or in the alternative a preliminary injunction "against any remaining building of the House, the sale of the House, and any other conduct considered a breach of Myers' duty of loyalty to AHP or breach of the Agreement," namely "using AHP's confidential information to directly compete with AHP." [Doc. 3; Doc. 4, pg. 11]. AHP states that the requested relief substantially seeks to "preserve the status quo," as it does not know if the building of the House is completely finished, nor whether Myers has sold the house [*Id*.] AHP notes that the House is currently listed on several listing platforms and "could be sold at any moment." [*Id*.].

II.    ANALYSIS

The purpose of a temporary restraining order is to preserve and maintain the status quo for a very short period of time "so that a reasoned resolution of a dispute may be had." *Proctor & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 226 (6th Cir. 1996). The moving party has the

2

burden of proving that the circumstances "clearly demand" a temporary restraining order. *Overstreet v. Lexington-Fayette Urban Cty. Gov't.*, 305 F. 3d 566, 573 (6th Cir. 2002). Similarly, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535, 542 (6th Cir. 2007 (internal citation omitted).

The Court must consider four factors when deciding whether to grant a temporary restraining order or a preliminary injunction:

> (1) the likelihood that plaintiff "will succeed on the merits of the claim;"
> (2) whether plaintiff will "suffer irreparable harm without the grant of the extraordinary relief;"
> (3) whether granting an injunction "will cause substantial harm to others;" and
> (4) "whether the public interest is advanced" by issuing an injunction.

*United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994)); *see Ohio Republican Party v. Brunner,* 542 F.3d 357, 361 (6th Cir. 2008) (noting courts consider the same factors for a temporary restraining order as a preliminary injunction). These factors present a balancing test and are "not prerequisites that must be met." *Id*. The Court considers each factor in turn.

**1.      Likelihood that AHP will succeed on the merits of its claims.**

As an initial matter, the parties agreed that certain violations of the Agreement warranted injunctive relief, restraining Myers from breaching any of the provisions in "paragraphs 6, 7 or 8 and to maintain the status quo." [Doc. 1-1, pg. 5]. Paragraph 6, titled "Non-Competition Agreement and Restrictive Covenant," prohibits Myers from doing business or providing services similar to those of AHP within a 60-mile radius of its Chattanooga office for one year after termination of his employment [Doc. 1-1, ¶ 6, and pg. 11]. AHP has alleged that is precisely what Myers is doing by building the House at issue, directly competing against it in violation of the

Agreement.  On its face, this prohibition on competing does not appear to be *per se* unreasonable either in geographic limitation or duration.  *See, e.g., Reardigan v. Shaw Indus., Inc.*, 238 Ga. App. 142, 144, 518 S.E.2d 144, 143-45 (1999) (finding non-compete clause with a maximum of two-year duration, and a 50-mile radius reasonable and enforceable).

Here, AHP has shown that Myers is directly competing with AHP in violation of the Agreement and that Myers is building the House within the restricted area outlined in the Agreement.  It has further shown that Myers has misappropriated AHP's own building plans to build the home.  Myers built and put the House on the market, not as part of his employment with AHP.  Thus, AHP has shown Myers is likely breaching the Agreement, at least with respect to the noncompete provisions.

Moreover, Myers agreed to injunctive relief as a remedy for a breach of paragraph 6.  Even absent an express provision, injunctive relief is generally an appropriate remedy to enforce a non-compete clause such as the one found in the Agreement. *See, e.g., FirstEnergy Sols. Corp. v. Flerick,* 521 F. App'x 521, 522 (6th Cir. 2013) (affirming district court decision to enjoin salesman from violating a noncompete clause which prohibited him from directly competing with his former employer for one year after the termination of his employment).  Because AHP has shown that it will likely succeed on the merits of its breach of contract claim, and because a preliminary injunction was contemplated by the parties when they executed the Agreement, the Court finds the first factor weighs in favor of granting injunctive relief.

**2.      Whether AHP will suffer irreparable harm without the grant of extraordinary relief.**

AHP argues it will suffer irreparable injury in the absence of injunctive relief "in the form of loss of goodwill, loss and diversion of potential customers, loss of opportunity that would enhance AHP's knowledge regarding customers, pricing, and marketing in the geographical area

4

surrounding the House, and loss of income lawfully belonging to AHP." [Doc. 4, pg. 8]. Courts have found that "the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer." *FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 529 (6th Cir. 2013) (quoting *Basicomputer Corp. v. Scott,* 973 F.2d 507, 512 (6th Cir. 1992)).

It is well established, however, that harm is not "irreparable" if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992). AHP has alleged damage to its goodwill and other intangible losses.[1] At this point, it is not clear whether monetary damages could adequately compensate AHP for its losses stemming from Myers' violation of the Agreement. Where the nature of the loss is difficult to assess, monetary damages are insufficient. *Id.* at 511-12. For example, losses related to market opportunity and customer relations are not easy to quantify, and for this reason "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *FirstEnergy Sols. Corp.*, 521 F. App'x at 529 (quoting *Basicomputer*, 973 F.2d at 512).

Myers also agreed that "a breach by [him] of any of the provisions of Paragraphs 6, 7, or 8 of this Agreement will cause irreparable damage to [AHP]." [Doc. 1-1, pg. 5]. While such a contractual provision "cannot act as a substitute for a [finding] regarding injunctive relief," it is evidence properly considered when determining whether a party has suffered irreparable harm at this stage. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1266 (10th Cir. 2004) (internal citations and quotation marks omitted). Because the losses are difficult to

---

[1] It is easy to see how this might result in loss of income lawfully belonging to AHP, and how it could split AHP's customer base and affect pricing. AHP has also alleged Myers used his position with AHP to purchase appliances using one of AHP's trade accounts, which it claims could adversely affect AHP's relationship with its vendors.

5

quantify, and because the parties contractually agreed that breach of the noncompete clause would cause irreparable damage to AHP, the second factor weighs in favor of granting injunctive relief.

**3.     Whether granting an injunction will cause substantial harm to others.**

AHP argues that "any harm suffered by Myers and third parties" would not compare to the harm suffered by AHP absent a TRO/preliminary injunction as described above [Doc. 4, pg. 9]. AHP states that the relief sought—prohibiting the sale or attempted sale of the House and enforcing the Agreement—would not harm third parties because to its knowledge no potential customer has yet contracted to buy the House [*Id*.].

The Court agrees that no third parties would be harmed if Myers is enjoined from selling the House at issue, as long as no buyer has yet contracted to purchase the House.  There is no evidence that Myers has sold the home, only that he is marketing it.  Myers may suffer some economic harm in the short term but that is to be balanced against the harm to AHP if no injunctive relief is granted.  *See, e.g., Larweth v. Magellan Health, Inc.,* 841 F. App'x 146, 156, 159 (11th Cir. 2021) (balancing harms resulting from an injunction and finding employer's "irreparable harm" due to "loss of customers" greater than that of employee whom the district court enjoined from competing with employer after he breached a restrictive covenant between them).

Because no third parties will be harmed if the Court grants injunctive relief, and because any harm to Myers is outweighed by potential harm to AHP if it is not granted, the third factor weighs in favor of granting an injunction.

**4.     Whether the public interest is advanced by issuing an injunction.**

Finally, AHP argues a TRO/preliminary injunction would serve "widely recognized policies that benefit the public interest." [Doc. 4, pg. 10].  "Upholding reasonable [noncompete agreements] is within the public interest."  *Sirius Computer Sols., Inc. v. Sparks*, 138 F. Supp. 3d

821, 843 (W.D. Tex. 2015). Enforcement of noncompete provisions in employment contracts promotes stability and trust in employment relationships, and enforcement of contractual obligation promotes "honesty and fidelity" in the business world. *Greene Cty. Tire & Supply, Inc. v. Spurlin*, 338 S.W.2d 597, 600 (Tenn. 1960). Said another way, the public has an interest in knowing that people will honor the reasonable contracts they form, and that the courts will uphold such contracts when breach occurs. That weighs in favor of granting an injunction.

## III.    CONCLUSION

Based on the record before it, the Court finds it necessary to preserve the status quo between the parties and to issue a temporary restraining order to avoid immediate and irreparable injury, loss, or damage to AHP. It is therefore **ORDERED** that AHP's Motion for Temporary Restraining Order/Preliminary Injunction [Doc. 2] is **GRANTED in part and DENIED in part.**[2] Fed. R. Civ. P. 65 (d) provides that every order granting an injunction and every restraining order must:

> (A) state the reasons why it issued;
> (B) state its terms specifically; and
> (C) describe in reasonable detail—and not be referring to the complaint or other document—the act or acts restrained or required.

Fed. R. Civ. P. 65(d).

Accordingly, for the reasons stated in this memorandum opinion and order:

1.      Defendant Nathan Myers is hereby **ENJOINED** from constructing any remainder of the residence located at 1786 Welcome Valley Road in Benton, Tennessee 37307.

---

[2]      AHP asks the Court to enjoin Myers from breaching his "fiduciary duty of loyalty to AHP," but this request is overbroad and cannot be described in the "reasonable detail" required for a Temporary Restraining Order. *See* Fed. R. Civ. P. 65(d)(1)(C). Thus, to the extent AHP requests injunctive relief as to Myers' fiduciary duty, that part of the motion is denied.

7

2.      Defendant Nathan Myers is further **ENJOINED** from selling or attempting to sell the residence located at 1786 Welcome Valley Road in Benton, Tennessee 37307.

3.      Defendant Nathan Myers is further **ENJOINED** from using any plans, accounts, trade secrets, customer lists, or any other resource available only to employees from AHP in building, constructing, or selling or attempting to sell any other residential homes located within a 60-mile radius of AHP's Chattanooga, Tennessee office located at 2265 Gunbarrel Road, Chattanooga, Tennessee 37421.  Defendant Myers shall not "engage in any business which directly or indirectly competes with [AHP's] Business or assist any other person in doing so." [Doc. 1-1, pg. 2].

4.      This Temporary Restraining Order shall be effective immediately upon filing.

5.      AHP shall provide Myers with notice[3] of this Temporary Restraining Order as soon as practicable;

6.      AHP shall post a monetary bond in the amount of **ten thousand dollars ($10,000)** no later than **September 24, 2021 at 1:00 p.m.** S*ee* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.");

---

[3]     AHP states in its Verified Complaint that "Notice was given to Myers as required under Fed. F. Civ. P. 65(a)(1)." [Doc. 1, pg. 1, n. 1].  Even if Myers was not given notice, this order complies with the requirements for issuing a temporary restraining order without notice because it is based on "specific facts" from AHP's "verified complaint," AHP has shown it will likely suffer "immediate and irreparable injury, loss, or damage" from the possible sale of the House before Myers can be heard, and AHP states in its verified complaint that Myers was given notice, indicating at least an attempt to do so. *See* Fed. R. Civ. P. 65(b).

7.      The Court will hold a hearing to convert this Temporary Restraining Order to a preliminary injunction on **Tuesday, September 28, 2021 at 1:30 p.m.** before the undersigned in **Courtroom 400** of the **James H. Quillen United States Courthouse.**

8.      The Temporary Restraining Order shall expire upon conclusion of the preliminary injunction hearing *or* on October 7, 2021 at 12:00 p.m., whichever is earlier, unless extended by the Court or by agreement of the Parties;

9.      Plaintiff's Motion for Expedited Hearing [Doc. 3] is **DENIED** as **MOOT**; and

10.     The clerk is **DIRECTED** to promptly file and record this Order.

SO ORDERED:

s/Clifton L. Corker
United States District Judge